UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW PIERCE,            : | |
|     Plaintiff,            : | |
|                            : | |
|     v.                     : | CASE NO. 3:14-cv-1477 (VLB) |
|                            : | |
| OMPRAKASH PILLAI,         : | September 30, 2015 |
|     Defendant.            : | |

**MEMORANDUM OF DECISION DENYING
DEFENDANT'S MOTION TO DISMISS [Dkt. #9]**

Plaintiff, Andrew Pierce ("Pierce"), incarcerated and proceeding *pro se,* has filed this action under 42 U.S.C. § 1983 against defendant Dr. Omprakash Pillai ("Pillai"), alleging deliberate indifference to a serious medical need in connection with Plaintiff's exposure to Methicillin-resistant Staphylococcus aureus ("MRSA"). The Defendant moves to dismiss on the grounds that the Complaint is time-barred and fails to state a claim. For the reasons that follow, the Defendant's motion to dismiss is DENIED.

I.    **Factual Background**

Plaintiff alleges that, on September 5, 2011, while he was a pretrial detainee, a nurse accidently inserted a needle into his arm incorrectly during his dialysis treatment, causing a bubble to form. [Dkt. #1, Compl. at ¶ 1]. The next day, September 6, 2011, the bubble ruptured, and Plaintiff was taken to the University of Connecticut Health Center ("UConn Health"), where a doctor repaired the rupture and prescribed antibiotics. [*Id.* at ¶¶ 2-3]. Specifically, the doctor explained that the antibiotics were intended "to prevent an infection." [*Id.* at ¶ 4]. Although the doctor sent the

prescription to the prison's medical department, Plaintiff did not receive antibiotics upon his return. [*Id.* at ¶ 5]. Over the following two weeks, Plaintiff submitted request slips to the prison infirmary inquiring when he would receive the antibiotics. [*Id.*] During this time, Plaintiff also sent two request slips to Defendant, informing him that a doctor at UConn Health had prescribed him antibiotics and inquiring as to when he would receive them. [*Id.* at ¶ 6]. Plaintiff received no response. [*Id.*]

On September 14, 2011, a nurse at the prison infirmary took a blood sample from Plaintiff, and two days later, on September 16, 2011, she determined that the sample tested positive for an MRSA infection. [*Id.* at ¶ 7]. Defendant did not inform Plaintiff of the test results. [*Id.*] Plaintiff's medical records identify Defendant as Plaintiff's attending physician, and indicate that the Defendant received and reviewed at least some of his medical records. [*Id.* at 13 (Plaintiff's post-surgery discharge document from UConn Health noting his prescription for "antibiotics" initialed and stamped by defendant); 16 (October 7, 2011 blood test results displaying a positive test for MRSA and listing Defendant as Plaintiff's "ATTENDING PHYSICIAN")].

Four days later, on September 20, 2011, Plaintiff filed a grievance against Defendant based on his not receiving "the antibiotics prescribed by the doctor at UConn Health." [*Id.* at ¶ 8].

On September 22, 2011, Plaintiff received medication to treat the

2

MRSA infection.  [*Id.* at ¶ 9].  Plaintiff does not allege that he knew the purpose of the medication that he received at the time it was administered. Instead, Plaintiff contends that he "had MRSA for 40 days, walking around the institution . . . and did not know [he] had MRSA."  [*Id.* at ¶ 10].

Plaintiff's condition worsened after he received the first medication, and a second medication also did not work.  [*Id.*]  On October 26, 2011, Plaintiff was taken to the University of Connecticut Medical Center and was hospitalized in isolation for one month.  [*Id.* at ¶ 11].  It was at the Medical Center when a "contagious disease specialist" informed him "that [he] had contracted the MRSA infection."  [*Id.*].  Plaintiff underwent surgery to remove the infected tissue in his upper arm, which resulted in a "gruesome scar" and "numbness" in his arm that presently impairs his physical activity.  [*Id.* at ¶ 12].  Since that time, Plaintiff has experienced difficulty "obtaining [his] medical records" and claims that they "are being deliberately withheld."  [*Id.* at ¶ 15].  Nevertheless, Plaintiff filed his Complaint on October 6, 2014.  [*Id.* at 1].

II.  Standard of Review

When considering a motion to dismiss filed pursuant to Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003).  The court considers not whether the plaintiff ultimately

3

will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim.  See *York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the requirement that the court accept the allegations in the complaint as true "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief.  Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Even under this standard, however, the court liberally construes a *pro se* complaint.  See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

### III. Application

Defendant first contends that Plaintiff's claims are time-barred.  See [Dkt. #9-1, Def.'s Memo. in Supp. of Mot. to Dismiss at 4-6].  Construing the allegations in the Complaint in a light most favorable to Plaintiff, the Court, at the present

4

stage, finds that Defendant is incorrect.

The limitations period for filing a section 1983 action is three years.  *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994).  A section 1983 claim generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999).  Thus, it is "discovery of the injury, not discovery of the other elements of the claim, [that] starts the clock."  *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 348-49 (S.D.N.Y. 2009) (citation and quotation omitted).

Here, Defendant is alleged to have committed two acts constituting deliberate indifference: (i) denying Plaintiff his prescribed antibiotics and (ii) withholding from Plaintiff the fact that he had contracted MRSA.  Plaintiff knew or should have known about the denial of the antibiotics no later than September 22, 2011, when he filed his grievance against Defendant.  However, his knowledge as to the second act is less clear.  While Plaintiff tested positive for MRSA on September 16, 2011, he pleads that Defendant, his attending physician, did not disclose this to him, and that this information was kept hidden from him until he learned about it on October 26, 2011, from an unaffiliated physician.  Given Plaintiff's allegations that he has limited access to his medical records, Defendant did receive his records and served as his attending physician, and that the Defendant did not inform him of his condition, Plaintiff has pled sufficient "non-conclusory" facts to render his claim timely under the fraudulent concealment doctrine, which permits for a tolling of the statute of limitations of a

5

§ 1983 claim, where a "fraudulent wrong [has] precluded his possible discovery of the harms that he suffered." *Pinaud*, 52 F.3d 1139, 1157-58 (2d Cir. 1995). Thus, Plaintiff's claim accrued on October 26, 2011, when he was finally informed of his condition by a third-party physician. *See Keating v. Carey*, 706 F.2d 377, 382 (2d. Cir. 1983) (when "a defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action"). Since Plaintiff filed his Complaint on October 6, 2014, Defendant's timeliness argument fails.

Alternatively, Defendant asserts that the Complaint fails to state a claim, because it is "[m]issing [] any allegations that [Defendant] knew of a substantial risk that the plaintiff would suffer serious harm as a result of his failure to immediately prescribe antibiotics." [Dkt. #9-1, Def.'s Memo. in Supp. of Mot. to Dismiss at 8-9].[1]  The Court disagrees.

The Complaint alleges that Defendant knew that the antibiotics had been prescribed by "the doctor at UConn [Health]" who performed major surgery on the Plaintiff, and that they were prescribed in order "to prevent an infection." [Dkt. #1, Compl. at ¶¶ 6, 14]. In addition, the documents Plaintiff attached to his Complaint list Defendant as Plaintiff's attending physician and strongly suggest Defendant knew Plaintiff had contracted MRSA *weeks* before Plaintiff learned of

---

[1] Defendant does not contest, for the purposes of his motion, that the Complaint "alleges a sufficiently serious medical condition." [Dkt. #9-1, Def.'s Memo. in Supp. of Mot. to Dismiss at 7].

6

it.  *See* [*id.* at 16].  These facts, coupled with Plaintiff's contention that he was not made aware of the nature of his infection until much later, by a doctor at a separate medical facility, permit for the reasonable inference that, at the time he denied Plaintiff the antibiotics, Defendant knew that the denial raised a substantial risk of serious harm.  *See Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).[2]  They also serve to plainly distinguish the allegations here, from the ones in *Arnold v. Westchester Cnty. Corr. Facility*, No. 10 Civ. 1249 (PAC) (RLE), 2011 WL 3501897 (S.D.N.Y. Jul. 18, 2011), the lone case Defendant cites in support of his position.  In *Arnold*, the plaintiff himself requested and was refused antibiotics, when he came to the defendant complaining of irritation in his upper lip.  *Id.* at *1.  The seriousness of that plaintiff's medical condition and need for antibiotics was discovered only *after* the defendant refused the plaintiff's request.  *Id.* at *4.  Here, Plaintiff's need for preventative antibiotics following major surgery was far more obvious to the Defendant, as were the attendant risks in failing to provide Plaintiff with the prescribed medication.

---

[2] Indeed, the allegations permit for the inference that Defendant purposely kept Plaintiff in the dark about his diagnosis in hopes of treating him with proper medication without ever having to disclose to Plaintiff the likely

IV.     **Conclusion**

The Defendant's motion to dismiss is DENIED.

SO ORDERED at Hartford, Connecticut, this 30th day of September 2015.

/s/
Vanessa L. Bryant
United States District Judge

---

cause of his condition, and thus, the Defendant's role in bringing it about.

8